IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERILYNN LEVANDUSKI, :
    Petitioner :
: No. 1:17-cv-01341
    v. :
: (Judge Rambo)
ROBERT SMITH, et al., :
    Respondent :

# MEMORANDUM

On July 31, 2017, the Court received and filed a petition for a writ of habeas corpus (Doc. No. 1), submitted pursuant to 28 U.S.C. § 2254 by pro se Petitioner TeriLynn Levanduski ("Levanduski"), an individual currently incarcerated at the State Correctional Institution in Muncy, Pennsylvania. After a show cause Order was issued, Respondent filed a response to the petition on October 16, 2017. (Doc. No. 12.) Levanduski filed a traverse on November 20, 2017. (Doc. No. 14.) Accordingly, this matter is ripe for disposition and for the following reasons, the petition will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

On January 14, 2004, following a jury trial, Levanduski was found guilty of: criminal homicide as an accomplice, murder in the first degree; criminal conspiracy in the commission of criminal homicide, a felony of the first degree; hindering apprehension, a felony of the third degree; and solicitation to commit

1

criminal homicide, a felony of the first degree. <u>Commonwealth v. Levanduski</u>, CP-45-CR-1519-2002 (C.C.P. Monroe County).

The Pennsylvania Superior Court aptly summarized the relevant facts as follows:

> [Levanduski's] parents lived next door to [her] and her common-law husband, Mr. Robert Sandt, the victim. On November 27, 2002, at approximately 10:10 P.M., [Levanduski's] father was standing in his driveway outside his home. He heard sounds resembling gunshots coming from the home of [Levanduski] and Mr. Sandt. [Levanduski's] father saw exhaust rising from a car idling in [Levanduski's] driveway. Shortly thereafter, [Levanduski's] father saw a dirty white car with two occupants leaving [Levanduski's] home.
>
> [Levanduski's] mother went to [Levanduski's] home to check on Mr. Sandt. She entered the home through the back door and saw Mr. Sandt collapsed face down in a chair. There was blood on his face. [Levanduski's] mother called 911, who asked her to take a pulse. Mr. Sandt had no pulse.
>
> [Levanduski's] mother called [Levanduski] at work to report Mr. Sandt's death. [Levanduski] left work to return home. When she reached her home, the police were already present and conducting an investigation. The police asked [Levanduski] to wait at her parents' house next door.
>
> Meanwhile, the police officers had noticed a clump of hair and some blood on the front porch of [Levanduski's] home. A planter and some furniture had been knocked over, indicating a struggle had taken place. After obtaining search warrants, police officers examined the home including the contents of a trashcan located in the kitchen. In the trashcan, they found a ripped-up letter. Investigation revealed that Mr. Sandt had written the letter, but the police were unable to determine when Mr. Sandt had written the letter. In the letter, Mr. Sandt wrote his suspicions about [Levanduski] and Mr. Fransen and their plan to do away with Mr.

Sandt. The letter hypothesized that [Levanduski] and Mr. Fransen were going to kill Mr. Sandt with his own missing .22 caliber revolver.

. . .

Police questioned [Levanduski] briefly at the scene and asked her to appear at the police station the next day for further questioning. [Levanduski] stayed at her parents' house until 1:30 P.M. the next day. Then, she and her parents drove to the police station to meet with members of the Stroud Area Regional Police Department. [Levanduski] spoke to detectives for about two and one half hours (1:50 P.M. to 4:20 P.M.). The detectives told [Levanduski] she could leave the interview at any time, as she was not under arrest.

During the initial interview, [Levanduski] made several highly incriminating admissions. The detectives informed [Levanduski] of her Miranda rights. [Levanduski] voluntarily waived her right to remain silent and the right to an attorney and continued to speak with the police. Essentially, [Levanduski] admitted that for the past three months she had been having an affair with Mr. Fransen. [Levanduski] wanted to leave Mr. Sandt and live with Mr. Fransen. [Levanduski] told the police how on November 21, 2002, she went on an overnight trip with her mother. On the same night, Mr. Fransen made an unannounced visit to the marital home and asked Mr. Sandt to relinquish ties with [Levanduski]. According to [Levanduski], Mr. Sandt responded that only [Levanduski] could make that decision. However, if [Levanduski] left Mr. Sandt, he expected reimbursement in the amount of $50,000.00 to $60,000.00 for what he considered his share of the marital property.

[Levanduski] confessed she and Mr. Fransen had been contemplating various options to get rid of Mr. Sandt. They discussed staging a drug overdose, a hunting accident, or a suicide. They referred to their objective as "the mission." [Levanduski's] statements also placed Mr. Fransen at the crime scene. She explained how Mr. Fransen planned their actions on the night of the murder; Mr. Fransen telephoned [Levanduski] to say he would be outside her home at around 10:00 P.M. Mr.

3

> Fransen instructed [Levanduski] to exit the home and get in her car as if she were headed to work. Mr. Fransen further instructed [Levanduski] to wait in her car until he came out of the house. [Levanduski] said she thought Mr. Fransen wanted to "straighten out" Mr. Sandt. She admitted she followed Mr. Fransen's instructions. She saw Mr. Fransen walk to the front porch as she walked to her car. She heard a scuffle and gunshots. Then she gave Mr. Fransen a ride to the main road in her white Volswagen Passat. [Levanduski] further confessed that on her way home from work after her mother's call, [Levanduski] disposed of letters and photographs linking her to Mr. Fransen.

Commonwealth v. Levanduski, No. 937 EDA 2004 (Pa. Super. Ct. Aug. 2, 2006). On March 26, 2004, Levanduski was sentenced to life without the possibility of parole. Commonwealth v. Levanduski, CP-45-CR-1519-2002 (C.C.P. Monroe County).

On April 1, 2004, Levanduski filed a direct appeal to the Pennsylvania Superior Court from the judgment of sentence. (Id.) On March 31, 2005, the Superior Court vacated/remanded the matter for a new trial finding that the trial court wrongly admitted the victim's letter since it constituted inadmissible hearsay. (Id.) On April 6, 2005, the Commonwealth filed an application for reargument en banc and on August 2, 2006, the Superior Court affirmed Petitioner's judgment of sentence. (Id.) On February 21, 2007, the Pennsylvania Supreme Court denied Levanduski's petition for allowance of appeal. (Id.) Petitioner's application for reconsideration of said denial was similarly denied on March 28, 2007. (Id.) On October 1, 2007, the United States Supreme Court denied Petitioner's petition for

certiorari. (Id.) Petitioner subsequently filed three PCRA petitions which were all ultimately denied. (Id.)

Petitioner filed the instant petition for writ of habeas corpus on July 31, 2017. (Doc. No. 1.) Levanduski alleges violations of her Sixth and Fourteenth Amendment rights in that she was deprived of the right to present rebuttal evidence and testimony, a violation of her Fourteenth Amendment right to a fair trial, and a violation of her Sixth and Fourteenth Amendment rights to a fair trial and due process. (Id.) Levanduski also alleges that she is actually innocent and that newly discovered evidence in the form of her co-defendant's transcripts from his PCRA hearing proves as much. (Doc. No. 1 at 10.)

## II. DISCUSSION

Respondent contends that Levanduski's petition is barred by the statute of limitations and that she does not meet any exceptions to the timeliness requirements. (Doc. No. 12 at 7.)

A petition filed under § 2254 must be timely filed under the stringent standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214. See 28 U.S.C. § 2241(d)(1). This statute provides, in relevant part, that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The AEDPA's statute of limitations contains a tolling exception whereby "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Id. § 2244(d)(2). Regardless of the start date of any claim, the limitations period is subject to two tolling exceptions: (1) statutory tolling, for the time a "properly filed" application for state post conviction review is pending in state court, 28 U.S.C. § 2244(d)(2), and (2) equitable tolling, a judicially-crafted exception.

6

Merritt v. Blaine, 326 F.3d 157, 151 (3d Cir. 2003) (citing Jones v. Morton, 195 F.3d 153, 158 (3d Cir. 1999)).

### A. Statutory Tolling

For purposes of statutory tolling, the federal district court must defer to the state court's determination of whether a state postconviction petition is timely or otherwise properly filed under state law. See Merritt, 327 F.3d at 165-66. The Pennsylvania Supreme Court denied Levanduski's application for re-argument/reconsideration of its denial of allocator on March 28, 2007. (Doc. No. 1 at 5.) Levanduski had ninety (90) days thereafter to file for a writ of certiorari with the United States Supreme Court. See Butler v. Walsh, 846 F. Supp. 2d 324, 329 (E.D. Pa. Mar. 1, 2012). Levanduski filed for a writ of certiorari with the United States Supreme Court which was denied on October 1, 2007. (Doc. No. 1 at 5); See Levanduski v. Pennsylvania, 552 U.S. 823 (Oct. 1, 2007). Accordingly, Levanduski's conviction became final on October 1, 2007. Therefore, Levanduski had one year, or until October 1, 2008, to file the instant petition for habeas corpus absent tolling of the statute of limitations.

Levanduski filed her first PCRA petition on April 16, 2008, at which point 167 days remained on the AEDPA statute of limitations. The Pennsylvania Supreme Court denied allocator as to the PCRA petition on June 5, 2012, meaning that Levanduski had until November 19, 2012, to file a timely federal habeas

corpus petition. Levanduski filed a second PCRA petition on August 24, 2012, at which point 87 days remained on the AEDPA statute of limitations. However, on January 11, 2013, the PCRA court dismissed the second petition as meritless. Levanduski had thirty (30) days thereafter to file an appeal with the Pennsylvania Superior Court, meaning the statute of limitations was tolled until February 11, 2013, when she failed to appeal the denial of her second PCRA petition. See Ajamu-Osagboro v. Patrick, 620 F. Supp. 2d 701, 713 (E.D. Pa. 2009). Accordingly, Levanduski had until May 9, 2013 to file a timely federal habeas corpus petition.

Well after the expiration of the AEDPA's limitations period, Levanduski filed her third PCRA petition on April 20, 2016, which was denied by the PCRA court on May 31, 2016 as untimely. Levanduski appealed this decision to the Pennsylvania Superior Court, which, on February 13, 2017, affirmed the PCRA court's conclusion that the April 20, 2016 PCRA petition was untimely. The Supreme Court has made clear that the state court's determination of timeliness is binding on the federal court. See Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)."). Levanduski subsequently filed the instant

federal petition for habeas corpus on July 31, 2017, over four (4) years past the AEDPA's limitation period. The instant habeas petition is indisputably untimely.[1]

B.   **Equitable Tolling**

Although Levanduski acknowledges the untimeliness of her petition, she argues that she is entitled to equitable tolling because after discovered evidence proves that she is actually innocent of the crimes she was convicted, and asserts that she can overcome the hurdle presented by the statute of limitations for this reason. Respondent maintains that Levanduski's alleged after discovered evidence, the letters written by Mr. Fransen to Levanduski which were used at trial, were known to Levanduski at the time of trial. (Doc. No. 12 at 8.)

Section 2244's one year statute of limitations is subject to equitable tolling.

> [E]quitable tolling is proper only when 'principles of equity would make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting [her] rights.' Moreover, to be entitled to equitable tolling, '[t]he petitioner must show that [she] exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient.

Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003) (alterations in original) (quoting Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998)). Equitable tolling may be appropriate in the following narrow circumstances: (1)

---

[1] Levanduski acknowledges the untimeliness of her habeas petition. (Doc. No. 1-2 at 1, 2.)

the defendant has actively misled the plaintiff; (2) the plaintiff has in some extraordinary way been prevented from asserting her rights; (3) if the plaintiff has timely asserted her rights mistakenly in the wrong forum; or (4) if the claimant received inadequate notice of her right to file suit, a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that she had done everything required of her. Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999); see also United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998). The petitioner must also establish that she "exercised reasonable diligence in investigating and bringing [the] claims." Miller, 145 F.3d at 618-19 (citing New Castle Cnty. v. Halliburton NUS Corp., 111 F.3d 1116, 1126 (3d Cir. 1999)). However, the Third Circuit has directed that "courts must be sparing in their use of equitable tolling" and do so only in the rare situation where the interests of justice so demand. Jones, 195 F.3d at 159 (quoting Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236 (3d Cir. 1999)).

A showing of actual innocence provides an equitable exception to the AEDPA's statute of limitations. See McQuiggin v. Perkins, 569 U.S. 383 (2013); Ajamu-Osagboro v. Patric, 620 F. Supp. 2d 701, 717-18 (E.D. Pa. 2009). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousely v. United States, 523 U.S 614 (1998). The petitioner must present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). Evidence is "new" only if it was not available at the time of trial and could not have been discovered earlier through the exercise of due diligence. See Houck v. Stickman, 625 F.3d 88, 93-94 (3d Cir. 2010). The Supreme Court cautioned, however, that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329).

Levanduski cannot rely on equitable tolling based on her assertion that the letters from Mr. Fransen to her are "new." On her appeal of her third PCRA petition, the Pennsylvania Superior Court provided the following in the context of Levanduski's newly discovered evidence argument:

> Levanduski invokes [the newly-discovered evidence exception, 42 Pa.C.S. § 9545(b)(1)(ii),] based upon information from the PCRA hearing of her co-defendant, Lennard Fransen, "specifically explaining the correct context and contents" of letters exchanged between herself and Fransen that were used at her trial. Levanduski further asserts she received the transcript of Fransen's February 25, 2013 PCRA hearing from a family member on March 28, 2016, and she filed her petition within 60 days, on April 20, 2016.
>
> The PCRA court explained Levanduski's argument as follows: [Levanduski] alleges the testimony of Lennard Fransen regarding the "true Contents" of letters

introduced at her trial invokes the timeliness exception under § 9545(b)(1)(ii) regarding after-discovered evidence. [Levanduski] avers she was unaware of this testimony until family members provided her with transcripts on or about March 28, 2016, from Mr. Fransen's PCRA hearing. At that hearing, Mr. Fransent testified that the "mission" he and [Levanduski] referenced in letters to each other was not to kill Robert Sandt but to resolve Mr. Fransen's child support issues in Florida.

. . .

Here, as the PCRA court opined: "The letters at issue were to and from [Levanduski] and Mr. Fransen. Thus, the meaning of the terms [Levanduski] used in said letters would have been available to her **at trial**." We agree with the PCRA court's analysis, and we conclude Levanduski cannot satisfy the Section 9545(b)(1)(ii) exception because she cannot establish that the "facts" were "unknown" to her.

The newly-discovered facts exception is *not* focused on newly discovered or newly willing sources for 'facts' that were already known." . . . Here, Levanduski has not alleged or proven any after-discovered facts, but has merely offered another source for facts that were known to her at the time of trial.

Commonwealth v. Levanduski, 1970 EDA 2016 (Pa. Super. Ct. Feb. 13, 2017) (emphasis original). Under 28 U.S.C. § 2254(e)(1), this court is bound by this factual finding. See Washington v. Sobina, 509 F.3d 613, 619 (3d Cir. 2007); Ziomek v. Wynder, Civ. No. 07-1719, 2008 WL 416887, at *4 (M.D. Pa. Feb. 13, 2008) (providing that under section 2254(e)(1), a federal habeas court must accept state-court factual findings relating to the federal statute of limitations). Because

Levanduski already knew of the letters and their content between herself and Mr. Fransen before and during the time of her trial, the letters cannot be considered "new" for the purposes of an actual innocence claim. See Hubbard v. Pinchak, 378 F.3d 333, 350 (3d Cir. 2004).

Moreover, Levanduski has not met the threshold requirement to utilize the actual-innocence gateway because she has not persuaded this court that, in light of the alleged "new evidence, no juror, acting reasonably, would have voted to find [her] guilty beyond a reasonable doubt.'" McQuiggin, 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329). Indeed, as set forth by the Pennsylvania Superior Court, Levanduski confessed the following:

> She had been engaged in a romantic relationship with Mr. Fransen; she told Mr. Fransen that Mr. Sandt treated her poorly; she and Mr. Fransen explored different scenarios, in letters and telephone conversations, that would result in Mr. Sandt's demise, including a staged "hunting accident," "drug overdose," or "suicide"; occasionally, she and Mr. Fransen referred to their plans to get rid of Mr. Sandt as "the mission"; she gave Mr. Fransen Mr. Sandt's .22 caliber revolver; she and Mr. Fransen agreed that, on the night of the murder, Mr. Fransen would "straighten out" Mr. Sandt while [Levanduski] waited in her car; she also agreed to give Mr. Fransen a ride to the end of her driveway; as she sat in her car, she heard "scuffling," followed by several gunshots; she drove Mr. Fransen from the murder scene to the end of her driveway; she disposed of letters written by Mr. Fransen, which discussed harming Mr. Sandt. [Levanduski] freely confessed to how and why Mr. Fransen murdered Mr. Sandt. [Levanduski's] confession unequivocally implicated her in the death of Mr. Sandt.

13

Commonwealth v. Levanduski, 937 EDA 2004, 907 A.2d 3, at *21 (Pa. Super. Ct. Aug. 2, 2006). Therefore, the Court concludes that Levanduski's assertion of innocence fails to constitute new reliable evidence satisfying the McQuiggin/Schlup standard. Accordingly, Levanduski's petition will be denied.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). In the instant matter, jurists of reasons would not find the disposition of Petitioner's petition debatable. As such, no COA will issue.

## IV. CONCLUSION

For the foregoing reasons, Levanduski's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1), will be denied and a COA will not issue. An appropriate Order follows.

                                       s/Sylvia H. Rambo
                                       SYLVIA H. RAMBO
                                       United States District Judge

Dated: January 17, 2018